UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

VETERAN MEDICAL PRODUCTS, INC.,
TILLMAN INDUSTRIES, INC., JOSEPH
SZYPERSKI, PATRICK EDDY, JOHN
KOTWICK, MARK LONGCORE, and
RYAN HEIDENFELD,

        Plaintiffs,

v.

BIONIX DEVELOPMENT CORP., and
ANDREW J. MILLIGAN,

        Defendants.
_____/

Case No. 1:05-cv-655

HON.  GORDON  J.  QUIST

## OPINION

On September 23, 2005, Plaintiffs filed a complaint seeking a declaration that Plaintiffs are

not, as Defendants accuse, infringing United States Design Patent No. 423,669 ("the '669 patent"),

and have not, again, as Defendants accuse, misappropriated any of Defendants' trade secrets.  (Pls.'

Compl. at ¶ 24.A. & B.)  Moreover, Plaintiffs allege that Defendants' accusation that the product

they produce is infringing the '669 patent constitutes a false or misleading description of fact or false

or misleading representation of fact in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),

and Michigan common law of unfair competition.  (*Id*. at ¶¶ 26, 30.)  Finally, Plaintiffs allege that

Defendants tortiously interfered with their business relationship with one of their suppliers by

contacting the supplier and representing to it that Plaintiffs' product infringes the '669 patent.

Subsequent to the filing of Plaintiffs' complaint here, Defendants filed an action against Plaintiffs

in the Northern District of Ohio alleging claims for patent infringement and trade secret misappropriation.  Defendants now move to dismiss Plaintiffs' complaint on the ground that, although it was the first-filed, the court, for equitable reasons, should decline to exercise jurisdiction over Plaintiffs' complaint.  Moreover, Defendants maintain that this Court does not have personal jurisdiction over Defendant Dr. Andrew Milligan.  For the following reasons, the Court will deny Defendants' motion to dismiss.

## I. BACKGROUND

Bionix, an Ohio corporation whose principal place of business is in Toledo, Ohio, is the owner of the '669 design patent for a disposable plastic ear curette.  (Defs.' Mem. Supp. Mot. Dismiss at 2.)  Tech Group, a company located in Grand Rapids, Michigan, produced the plastic ear curette for Bionix pursuant to Bionix's specifications.  (*Id*.)  Plaintiffs Joseph Szyperski, Patrick Eddy, John Kotwick, Mark Longcore, and Ryan Heidenfeld, are former employees of Tech Group.  These individuals left Tech Group to work for Tillman Industries, Inc. ("Tillman") and/or Veteran Medical Products, Inc. ("Veteran").  "Tillman manufactures plastic parts and Veteran sells those plastic parts, including ear curettes."  (Pls.' Br. Opp'n Defs.' Mot. Dismiss at 2.)  Tillman and Veteran each have only one facility, both being located in Grand Rapids, Michigan.  (*Id*.)

On September 7, 2005, Dr. Andrew Milligan, President and Chief Executive Officer of Bionix, called Tillman and alleged that the ear curettes sold by Veteran were infringing Bionix's patent.  (*Id*. at 3.)  On September 9, 2005, Sean Callaghan, Vice President of Operations of both Tillman and Veteran, called Dr. Milligan to discuss his allegations.  "Dr. Milligan repeated his allegation of infringement of Bionix's patent" and "also alleged that people associated with Tillman and/or Veteran stole trade secrets from Bionix."  (Callaghan Decl. at ¶ 8.)  On September 14, 2005,

Dr. Milligan called Classic Die, a company located in Grand Rapids, Michigan, that supplies tooling for Tillman, and represented to it that the tooling it was providing to Tillman to make ear curettes infringed Bionix's patent.  (Pls.' Br. Opp'n Defs.' Mot. Dismiss at 3.)  On September 16, Sean Callaghan again called Dr. Milligan to discuss his allegations. (Callaghan Decl. at ¶ 9.) Dr. Milligan stated "that there would be no deal." (*Id.*)  He also stated that he was going after Veteran (*Id.*)

On September 20, 2005, Dr. Milligan sent a letter addressed to Callaghan that reads as follows:

> This confirms our recent telephone conversation in which you represented to me that [Veteran and Tillman] . . . have ceased the manufacture, use, offering for sale, sale, or importation of any products, including . . . the "Clear Ear Disposable Ear Curettes" that infringe United States Design Patent No. 423,669 owned by Bionix.

> Enclosed is the Complaint and Consent Judgment for Preliminary and Permanent Injunction for your review.  Please sign the Consent Judgment for Preliminary and Permanent Injunction and return it to me.  We intend to file it, along with the Complaint with the Court shortly.  In the alternative, please have your lawyer contact my counsel.

> If we do not have a response by Monday, September 26, 2005, we will file a lawsuit in federal court and seek damages for willful design patent infringement and trade secret misappropriation.

(Defs.' Mem. Supp. Mot. Dismiss Ex. C.)

On September 23, 2005, Plaintiffs filed this declaratory judgment action, along with claims for unfair competition and tortious interference, here in the Western District of Michigan.  On October 4, 2005, Bionix filed a complaint in the Northern District of Ohio alleging that the ear curette Plaintiffs produce infringes the '669 patent and that Plaintiffs misappropriated its trade secrets.

## II. ANALYSIS

For purposes of determining whether this Court should decline to exercise jurisdiction over Plaintiffs' first-filed action in favor of Bionix's subsequently filed action in the Northern District of Ohio, the Court must apply Federal Circuit law.  Since Plaintiffs' declaratory judgment action is based, at least in part, on 28 U.S.C. § 1338, which provides that the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents," any appeal from this action may lie only in the United States Court of Appeals for the Federal Circuit. *See* 28 U.S.C. § 1295(a)(1) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction – of an appeal from a final decision of a district court of the Untied States . . . if the jurisdiction of that court was based, in whole or in part, on section 1338 . . . .").  The Federal Circuit has noted that the "question of whether a properly brought declaratory action to determine patent rights should yield to a later-filed suit for patent infringement raises the issue of national uniformity in patent cases, and invokes the special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137 (1995).  "Thus," the court continued, "although the Federal Circuit applies the procedural law of the regional circuit in matters that are not unique to patent law . . . the regional circuit practice need not control when the question is important to national uniformity in patent practice." *Id*.

The Federal Circuit applies "the general rule favoring the forum of the first-filed case, 'unless considerations of judicial and litigant economy, and the just and effective disposition of [the] dispute[], requires otherwise.'" *Electronics for Imaging*, *Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed.

Cir. 2005) (quoting *Genentech*, 998 F.2d at 938).  While exceptions to the first-to-file rule "are not rare," the court has explained, "[t]here must . . . be sound reasons that would make it unjust or inefficient to continue the first-filed action."  *Genentech*, 998 F.2d at 937-38.  "Such reason may be the convenience and availability of witnesses, or [the] absence of jurisdiction over all necessary or desirable parties . . . ."  *Id.* at 938.

Defendants recognize that the decision to entertain Plaintiffs' declaratory judgment action lies within this Court's discretion.  (Defs.' Reply Br. Supp. Mot. Dismiss at 3.); *see Electronics for Imaging*, 394 F.3d at 1345 ("The district court is not required to exercise declaratory judgment jurisdiction, but has 'unique and substantial discretion' to decline that jurisdiction.") (quoting *Wilton*, 515 U.S. at 286, 115 S. Ct. at 2142).  Defendants assert that "the just and effective disposition" of this dispute requires this Court not to exercise its jurisdiction over Plaintiffs' suit.  In support of this position, Defendants first contend that Plaintiffs filed their action in the Western District of Michigan in anticipation of and to preempt Bionix's filing of a suit against Plaintiffs in the Northern District of Ohio for patent infringement and trade secret misappropriation.  This forum shopping, Defendants maintain, should not be countenanced.  The Federal Circuit has noted that while "a district court may consider whether a party intended to preempt another's infringement suit when ruling on the dismissal of a declaratory action," it has "endorsed that as merely one factor in the analysis," which, alone, is not a sufficient "sound reason" for a district court to decline jurisdiction over a first-filed action.  *Electronics for Imaging*, 394 F.3d at 1347-1348.  In *Genentech*, for instance, the court "reversed the district court's dismissal of a declaratory action, as it was premised

solely on the fact that the suit was designed to anticipate a later-filed complaint in another forum."[1] *Id*. at 1348. Similarly, in *Electronics for Imaging*, the court reversed the district court's dismissal of the plaintiff's first-filed suit because the district court's decision, which did not cite any other compelling reason for departing from the first-to-file rule, rested "exclusively on the alleged anticipatory nature" of the plaintiff's suit. 394 F.3d at 1348.

In *Brower v. Flint Ink Corp*., 865 F. Supp. 564, 571 (N.D. Iowa 1994), the plaintiff similarly argued that her second-filed suit should be permitted to proceed over the defendant's first-filed suit since, the plaintiff maintained, the defendant filed its suit in anticipation of plaintiff filing her suit in order to forum shop. The court noted, and this court agrees, that "[d]eclaratory judgments 'are by nature 'anticipatory,' and . . . there is a natural desire by all parties to select a preferred forum . . . .'" *Id*. (quoting *Viacom Int'l Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 867 (S.D.N.Y. 1991)). Moreover, the Federal Circuit has recognized that the creation of the federal circuit to create national uniformity "has in large part tempered the impact of traditional forum shopping in patent cases, so the stakes of a race to the courthouse are less severe." *Serco Serv. Co. v. Kelley Co.*, 51 F.3d 1037, 1040 (Fed. Cir. 1995). Indeed, the Northern District of Illinois recognized that the mode of forum shopping disapproved by *Genentech* is that of "seeking out a forum solely on the basis of having the suit heard in a forum where the law or judiciary is more favorable to one's cause than in another." *Roadmaster Corp. v. Nordictrack, Inc.*, 1993 WL 625537, at *3 (N.D. Ill. Sept. 20, 1993).

---

[1] In their initial brief, Defendants rely heavily upon the Seventh Circuit's decision in *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir. 1986), and decisions following *Tempco*. In *Tempco*, the court held that where a "declaratory judgment action is filed in anticipation of a [subsequently filed] infringement action, the infringement action should proceed . . . ." *Id*. at 749. The Federal Circuit in *Genentech*, however, chose not to follow *Tempco's* rule. Rather, as noted above, the *Genentech* court announced that "the first-filed case is favored" regardless of whether the first-filed suit is a declaratory action filed in anticipation of an infringement suit. 998 F.2d at 937. In their reply brief, Defendants do not continue to rely upon *Tempco* and its progeny.

"If filing in a district that is more convenient to the plaintiff than to the defendant is enough to open the plaintiff up to a charge of forum shopping," the court noted, "then the exception would swallow the rule." *Id.*

While the filing of a declaratory action in a forum convenient to the filing party in anticipation of an infringement action being brought against that party is not a sufficient "sound reason" for a district court not to exercise jurisdiction over a first-filed suit, courts have recognized that a district court may permit a second-filed suit to continue over a first-filed suit where the first-filer's conduct was in bad faith or where the first-filer otherwise engaged in inequitable conduct. For instance, a court may permit a second-filed action to proceed "where the plaintiff in the first-filed action was able to file first only because it had misled the filer of the second-filed action as to its intentions regarding filing suit in order to gain the advantages of filing first." *Brower*, 865 F. Supp. at 569. Defendants maintain that such a case exists here. Specifically, Defendants contend that Plaintiffs "made an affirmative oral misrepresentation" that they would cease and desist from the infringing conduct "with the apparent purpose and effect of forestalling the patentee's filing of suit in Ohio." (Reply Br. Supp. Defs.' Mot. Dismiss at 1, 5.)

The first sentence of the September 20, 2005, letter that Dr. Milligan of Bionix sent to Sean Callaghan of Veteran states: "This confirms our recent telephone conversation in which you represented to me that [Veteran and Tillman] . . . have ceased the manufacture . . . of . . . the 'Clear Ear Disposable Ear Curettes' that infringe . . . [the '669 patent]." Plaintiffs do not deny representing this. Rather, Plaintiffs state only that, upon receipt of this letter, they feared that Bionix and Dr. Milligan would sue for patent infringement and trade secret misappropriation and, therefore, filed their declaratory action.

The Court finds that this letter does not evidence bad faith or inequitable conduct on behalf of the Plaintiffs. First, there is no indication that Plaintiffs misled Defendants about their intentions regarding filing suit in order to gain the advantages of filing first. Indeed, it does not appear that Plaintiffs in any way assured Defendants that they would not file suit first. Moreover, it does not appear from the letter that Dr. Milligan viewed the issue of the alleged infringement and trade secret misappropriation as resolved. In the letter, Dr. Milligan asks Callaghan to sign the proposed consent judgment, or, in the alternative, to have his lawyer contact Milligan's counsel. It is unremarkable that, before filing suit, Bionix would first attempt to obtain a favorable consent judgment. Milligan's statement that he would file a lawsuit in federal court seeking damages for willful design patent infringement and trade secret misappropriation if Callaghan did not respond by Monday, September 26, 2005, further indicates that Dr. Milligan was not relying upon any assurance from Plaintiffs that they had resolved the issue and were merely waiting to enter a consent judgment. Plaintiffs were entitled, rather than to continue to negotiate, to file suit seeking a declaration that they have neither infringed Bionix's patent nor misappropriated its trade secrets. *Platting Res., Inc. v. UTI Corp.,* 47 F. Supp. 2d 899, 904 (N.D. Ohio 1999) (noting that since negotiations to resolve the parties' dispute were underway before the parties filed their respective actions, "either party was in a position to file suit 'before the other'").

Defendants next maintain that this case is analogous to the Federal Circuit's decision in *Serco Services Co. v. Kelley Co.*, 51 F.3d 1037 (Fed. Cir. 1995), in which the court held that the district court's decision dismissing a first-filed declaratory judgment action in favor of a later-filed action was not an abuse of discretion. 51 F.3d at 1040. In *Serco*, Kelley sent a letter to Serco accusing it of infringing upon its patent and threatening Serco with litigation if it did not cease its alleged

infringement by a specified date. *Id*. at 1038. Some months after that date had elapsed, Kelley sent another letter to Serco stating that unless Serco ceased manufacturing the alleged infringing devise by September 20, it would file suit to enjoin further infringement. *Id*. On September 17, 2003, Serco filed a declaratory judgment action in the Northern District of Texas. *Id*. On September 20, 1993, Kelley filed suit in the Eastern District of Wisconsin seeking damages and injunctive relief from Serco's alleged infringement. *Id*. Kelley then moved to dismiss Serco's declaratory judgment suit in the Northern District of Texas. *Id*. The district court granted Serco's motion. *Id*. The court of appeals affirmed, holding that the district court's dismissal of Serco's first-filed action was not an abuse of discretion. *Id*. at 1040. The court noted that in dismissing Serco's action, the district court relied, in part, on the fact that Serco filed its action in anticipation of Kelley's infringement suit. *Id*. at 1039. The court noted that while there was "merit to Serco's suggestion that" the district court's dismissal of "its suit as anticipatory . . . [was] inconsistent with *Genentech*'s repudiation of the Seventh Circuit's *Tempco* rule . . .," the court concluded that it could not say "that it was an abuse of discretion to consider that Serco intended to preempt Kelley's infringement suit . . . as one factor in the decision whether to dismiss the declaratory suit in favor of Kelley's subsequent infringement action." *Id*. at 1040. "Beyond the race to the courthouse," the court noted, the district court "considered the convenience of the parties as well." *Id*. The district court "found that all of Kelley's witnesses were located in Wisconsin while Serco's were scattered throughout the country," and that "while some of Serco's documents were located at its Canadian headquarters, all of Kelley's documents were located in Wisconsin." *Id*. "These factors," the court noted, supported the district "court's decision to dismiss." *Id*. (citing *Genentech*, 998 F.2d at 938 (noting that reason to yield to later-filed suit "may be the convenience and availability of witnesses")).

While Plaintiffs' suit was filed in anticipation of Bionix's suit in Ohio, considerations of judicial and litigant economy, unlike in *Serco*, do not favor dismissing Plaintiffs' first-filed suit. Although the convenience of the litigants is in equipoise (Defendants and all their documents are located in Ohio and Plaintiffs and all their documents are located in Michigan), the convenience of the relevant third-parties favors Michigan. Tech Group, the company that produces Bionix's ear curette and the company for which Plaintiffs Szyperski, Eddy, Kotwick, Longcore, and Heidenfeld formerly worked, is located in Michigan. Moreover, Classic Die, the company that supplies tooling to Plaintiffs and the company that Dr. Milligan called representing to it that Plaintiffs were infringing Bionix's patent, a call that forms the basis for Plaintiffs' tortious interference claim, is also located in Michigan.

Another factor to be considered in determining whether to exercise jurisdiction over a first-filed suit is the existence of "jurisdiction over all necessary or desirable parties . . . ." *Genentech*, 998 F.2d at 938. Defendants argue that this Court lacks personal jurisdiction over Dr. Milligan. The Federal Circuit has explained that determining whether specific jurisdiction over a nonresident defendant is proper entails two inquiries: first, whether jurisdiction exists under the state's long-arm statute; and second, if such jurisdiction exists, whether its exercise would be inconsistent with the limitations of the due process clause. *Electronics for Imaging v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). Defendants do not argue that jurisdiction does not exist under Michigan's long-arm statute.[2] Unlike subject matter jurisdiction, where the court must assure itself that it has jurisdiction

---

[2] Indeed, neither party even refers to Michigan's long-arm statute. Defendants, for their part, simply state that Plaintiffs "have accurately set forth the test that the Federal Circuit uses to determine personal jurisdiction." Plaintiffs set out the test for determining whether a court's exercise of jurisdiction comports with due process, namely, whether the defendant purposefully directed minimum contacts with the forum state such that the exercise of jurisdiction over the defendant would be fair and reasonable.

even if no party raises the issue, personal jurisdiction may be waived, and the court need not, therefore, either assure itself that it has personal jurisdiction over a defendant or consider arguments regarding personal jurisdiction not raised by the defendant. Nonetheless, even if Defendants had argued that jurisdiction does not exist over Milligan under Michigan's long-arm statute, the Court would have found to the contrary. Michigan's long-arm statute provides that "[t]he doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort," "shall constitute a sufficient basis of jurisdiction to enable a court . . . of this state to exercise limited personal jurisdiction over the individual . . . ." M.C.L. § 600.705(2). Plaintiffs allege that Milligan, in calling Classic Die, a company located in Michigan, tortiously interfered with Veteran's business relationship with Classic Die. Plaintiffs also allege that Milligan's accusations, made to Veteran and Classic Die, that Veteran's ear curette infringes Bionix's patent, constitute false or misleading descriptions of fact or false or misleading representations of fact in violation of the Lanham Act and Michigan common law of unfair competition. Since the consequences of these alleged torts occurred in Michigan, Michigan's long-arm statute confers jurisdiction.[3]

---

[3] In *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006), the plaintiff alleged that the defendant, by sending letters into Florida accusing the plaintiff of infringing upon the defendant's patent, tortiously interfered with the plaintiff's business relationships and engaged in unfair competition. The Federal Circuit found that the provision in Florida's long-arm statute that "authorizes jurisdiction over a party that commits a tortious act within the state" did not confer jurisdiction over the defendant on the basis of the plaintiff's allegations since, the court opined, the letters sent into Florida "may qualify as protected communications under federal patent law and thus may not be tortious." *Id.* at 1361. To make a prima facie showing of jurisdiction under a provision of a state's long-arm statute that confers jurisdiction over a defendant who commits a tort in the state, the plaintiff need simply allege as much. *See Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1282-83 (Fed. Cir. 2005). For the *Breckenridge* court to have found that personal jurisdiction did not exist under the provision of Florida's long-arm statute that confers jurisdiction over a defendant who commits a tort in Florida where the plaintiff alleged that the defendant's sending of letters accusing it of infringing upon the defendant's patent resulted in two torts (tortious interference and unfair competition) in Florida, the court must have assumed that no tort could exist on the basis of a patentholder's accusations that a party is infringing upon the patentholder's patent. Even if this conclusion were accurate, the court conflated a plaintiff's failure to state a claim with lack of personal jurisdiction. More fundamentally, the court's intimation that a plaintiff cannot state a tort claim on the basis of a defendant's accusation that the plaintiff is infringing upon the defendant's patent is contrary to prior established federal circuit precedent. In finding that Florida's long-arm statute did not provide jurisdiction over the torts the plaintiff alleged to have occurred in Florida, the *Breckenridge* court cited *Globetrotter Software, Inv. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004), and quoted it

11

Plaintiffs maintain that the exercise of jurisdiction over Milligan would not violate due process since Milligan purposefully engaged in activities with Michigan such that the exercise of jurisdiction over him would be "fair and reasonable."  Plaintiffs note that Milligan has had a long-standing business relationship for the manufacturing of ear curettes with Tech Group, which is located in Michigan.  Moreover, Plaintiffs explain, Milligan purposefully directed his activities toward Michigan when he called Classic Die in Michigan and represented to it that Veteran was infringing Bionix's patent.  Finally, Plaintiffs note that Milligan purposefully directed his activities toward Michigan when he called and wrote Veteran accusing it of infringing Bionix's patent.  In response, Defendants do not argue that Milligan did not engage in sufficient purposefully availed "minimum contacts" with Michigan for the exercise of jurisdiction to be fair and reasonable.  Rather, Defendants argue only that this Court lacks personal jurisdiction over Milligan because, in contacting Michigan, "Milligan was not acting in his personal capacity, but [rather acted] solely in his capacity as president of Bionix."  There is some support for this position.  In *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1375 (Fed. Cir. 1998), the plaintiff filed a suit alleging claims for patent infringement, trade libel, and unfair competition, against Aeroflex Inc., its parent company, Aarotech, Inc., and against Aeroflex's president, Albert Young.  The court found that personal jurisdiction did not exist over Young since all of his "actions in relation to the state of California were taken in his role as an officer of Aaroflex" and there was no basis to "pierce the corporate veil" to hold Young directly liable.  *Id*. at 1380.

---

as follows: "The federal patent laws preempt state laws that impose tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation."  In the next paragraph of the *Globetrotter* opinion, the court goes on to explain that "[a] plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless."  Thus, by implication, a plaintiff may allege tort claims for tortious interference or unfair competition on the basis of a patent holder's accusations of infringement; for the plaintiff to prevail on these claims, however, the plaintiff must show that the patent holder's accusations of infringement were objectively baseless.

Since the *3D Systems* court opined, in finding that personal jurisdiction did not exist over Young, that there was no basis "to pierce the corporate veil" to hold him liable, it follows that the court did not believe that Young could have been held directly liable for the alleged claims. In this case, Plaintiffs allege that Milligan committed two torts in Michigan – tortious interference of business relationships and unfair competition. The fact that Milligan committed these torts while acting as an officer of Bionix does not insulate him from liability. An officer is an agent of a corporation, and an agent is personally liable for the torts he commits.[4] Because Milligan could be held personally liable for his alleged commission of torts in Michigan, *3D Systems* does not support the conclusion that this Court lacks personal jurisdiction over Milligan.[5]

### III. CONCLUSION

Because the Court finds that Defendants have not met their burden in establishing that Plaintiffs' first-filed suit should be dismissed in favor of Defendants' subsequently filed suit, the Court will deny Defendants' motion to dismiss. Moreover, since the Court finds that personal jurisdiction exists over Milligan based on his alleged commission of torts, the consequences of which occurred in Michigan, the Court will deny Defendants' motion to dismiss Milligan for lack of personal jurisdiction.

---

[4] If the agent commits a tort while acting within the scope of his employment, of course, then the agent's employer (i.e., the corporation) would be secondarily liable pursuant to the doctrine of *respondeat superior*.

[5] While the Court distinguishes *3D Systems* in finding that the exercise of personal jurisdiction over Milligan is proper, the Court notes that if *3D Systems* finding of no personal jurisdiction over the corporate officer in that case were extended beyond its context, it would potentially be in conflict with the rule in the majority of regional circuits that have considered this issue. As explained by the Sixth Circuit, "[w]hile it is true that 'jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation,' . . . the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence," the court continued, "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment." *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 698 (6th Cir. 2000).

13

An order consistent with this opinion will be entered.


Dated:  September 14, 2006                    _____/s/ Gordon J. Quist_____
                                              GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE