UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VETERAN MEDICAL PRODUCTS, INC., *et al.*,

        Plaintiffs,

                                      Case No. 1:05-cv-655

v.                                    Hon. Hugh W. Brenneman, Jr.

BIONIX DEVELOPMENT CORPORATION,
 *et al.*,

        Defendants.

_____/

**OPINION REGARDING ATTORNEYS FEES PURSUANT TO 35 U.S.C. § 285**

This matter is now before the court on plaintiffs' "Notice and memorandum regarding declaration on attorney fees" (docket no. 140).

**I.      Background**

Plaintiffs filed this action on September 23, 2005. In their complaint, plaintiffs sought a declaratory judgment that the '669 Patent was not infringed and that no trade secrets had been misappropriated from defendants. In addition, plaintiffs sought damages for: federal unfair competition pursuant to § 43(a) of the Lanham Act, 16 U.S.C. § 1125(a) (Count I); violation of the Michigan common law of unfair competition, business defamation and product disparagement (Count II); and tortious interference with business relationships (Count III). Counts I and II arose from defendants' alleged statement that plaintiffs' product infringed the '669 Patent, which constituted a false or misleading description of fact or false or misleading representation of fact. Count III arose from an allegation that defendants tortiously interfered with one of plaintiffs' suppliers by contacting the supplier and representing to it that plaintiffs' product infringed the '669 patent.

On October 4, 2005, defendants filed an action against plaintiffs in the Northern District of Ohio alleging claims of patent infringement and trade secret appropriation. *See Bionix Development Corporation v. Veteran Medica Products, et al.*, No. 3:05-cv-7387 (N.D. Ohio) (the "Ohio lawsuit").[1] The Ohio lawsuit sought three claims for relief. First, defendants alleged that plaintiffs' disposable ear curettes infringed the '669 patent. *See* docket no. 6-4. Second, defendants alleged that plaintiffs misappropriated defendant Bionix's confidential and proprietary information and trade secrets in violation of Ohio law. *Id.* Third, defendants sought declaratory relief, equitable relief and other relief (including attorneys fees under § 285) against plaintiffs. *Id.*

On October 3, 2005, defendants moved to dismiss plaintiffs' action, claiming: that Michigan lacked subject matter jurisdiction over this matter; that this court lacked personal jurisdiction over defendant Milligan; that defendant Milligan had not been properly served under the Federal Rules of Civil Procedure; and that Ohio was the proper forum to adjudicate this matter fully. *See* docket no. 5. On September 14, 2006, this court denied defendants' motion. *See* Opinion and Order (docket nos. 13, 14). On October 13, 2006, more than one year after plaintiffs filed this action, defendants filed an answer and affirmative defenses. *See* docket no. 17. In addition, Bionix filed a counterclaim which involved the same basic claims for relief as asserted in the Ohio lawsuit: infringement of the '669 patent; misappropriation of its confidential and proprietary information and trade secrets in violation of state law (i.e., Michigan); and various declaratory, equitable and other relief (including attorneys fees under § 285). *Id.*

---

[1]A copy of the complaint filed in that action was attached to defendants' motion to dismiss. *See* docket no. 6-3.

The parties' Joint Status Report reflected that the alleged infringement of the '669 patent was but one part of this action, which also included a number of business torts under both federal and state law. *See* Joint Status Report (docket no. 23). The case was re-assigned to the undersigned on November 21, 2006. *See* docket no. 26. The court scheduled an informal conference to become acquainted with the patents in suit and the claims and defenses of the parties, which was held on May 16, 2007. *See* docket nos. 25, 40, 46.

On August 6, 2007, the parties stipulated to the dismissal of plaintiffs (and counterdefendants) Longcore and Kotwick. *See* Stipulation of dismissal (docket no. 55). Plaintiffs' subsequent summary judgment motion attacked all of defendants' counterclaims. *See* Motion for Summary Judgment (docket no. 56). Of particular interest to plaintiffs was the dismissal of defendants' counterclaim for misappropriation of trade secrets. *Id.* In their motion to file a brief under seal, plaintiffs advised the court that "[t]his is a trade secrets case." *See* Plaintiffs' Motion to file under seal (docket no. 57). It is not surprising that approximately two-thirds of the arguments set forth in plaintiffs' brief in support of the motion for summary judgment addressed defendants' counterclaim that plaintiffs misappropriated defendants' trade secrets. Plaintiffs' Brief (docket no. 58) (filed under seal).

On October 18, 2007, the court ruled as follows:

> The parties having agreed that plaintiffs do not infringe United States Patent No. 423,669 ("the '669 Patent'"), and the parties having agreed that it is not necessary to litigate the issue of the alleged invalidity of the '669 Patent any further in this action,
>
> IT IS ORDERED that plaintiffs' action for declaratory judgment is GRANTED to the extent that it seeks a declaration that the '669 Patent is not infringed by the plaintiffs; and

IT IS FURTHER ORDERED that the defendants' first counterclaim, which alleges infringement of the '669 Patent, and all relief sought in the counterclaim based thereon, is DISMISSED.

Order (docket no. 74). In a lengthy opinion, the court also granted plaintiffs' motion for summary judgment as to defendants' second and third counterclaims "for misappropriation of technical information for producing a plastic ear curette," but denied the motion in all other respects. Opinion (docket no. 76).

The case proceeded to trial and, on April 21, 2008, the jury entered a verdict in favor of plaintiffs. Pursuant to the verdict, the court entered a judgment in favor of plaintiffs in the amount of $199,000.00. *See* docket no. 118. After the jury rendered its verdict, plaintiffs submitted a motion for a finding that defendants' unsuccessful patent infringement counterclaim was an "exceptional case" warranting award of attorney fees pursuant to 35 U.S.C. § 285. *See* docket no. 119. Defendants filed a post-trial motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b). *See* docket no. 122.

In an opinion and order entered on March 31, 2009, the court considered and granted both defendants' motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) and entered an amended judgment which reduced plaintiffs' recovery to $0.00. *See* docket nos. 136, 137, and 138. The court also determined that this was an "exceptional case" making it eligible for an award of attorneys fees pursuant to 35 U.S.C. § 285. *See* docket nos. 136 and 137. Specifically, the court found that this was an appropriate case for an award of attorneys fees "due to the length of time defendants have forced plaintiffs to expend attorneys fees to defend against this baseless and unjustified litigation" arising from defendants' counterclaim for infringement of the '669 patent. *Id.* The court's order granting plaintiffs' motion for attorneys fees provided that if the parties could

4

not agree upon an appropriate amount of fees within 14 days of the entry of the order, then plaintiffs were required to submit an affidavit with any supporting documents justifying their claim for attorney fees and defendants were allowed to file a response.  *See* docket no. 137.  Consistent with the court's order, plaintiffs' filed a  "Notice and memorandum regarding declaration on attorney fees," requested attorney fees in the amount of $118,616.00.  *See* docket no. 140.  Defendants oppose the motion in part.

## II.    Discussion

Pursuant to 35 U.S.C. § 285, the court may, "in exceptional cases," award reasonable attorney fees to the prevailing party.  The purpose of § 285 is to provide the district court with discretion to award fees where it would be grossly unjust for the winner be left to bear the burden of his own costs of counsel which prevailing litigants normally bear.  *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1364 (Fed. Cir. 1990).  *See, e.g., Central Soya Company, Inc. v. Geo. A. Hormel & Company*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) ("[t]he purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit").  Having found that this is such an "exceptional case" warranting an award of attorney fees, the court must now determine the amount of the fee award.

"In determining the reasonableness of the award, there must be some evidence to support the reasonableness of, *inter alia*, the billing rate charged and the number of hours expended."  *Lam, Inc. v. Johns-Manville Corporation*, 718 F.2d 1056, 1068  (Fed. Cir. 1983).  In determining an appropriate award of attorney fees under § 285, the court may use the hybrid lodestar approach.  *Maxwell v. Angel-Etts of California, Inc.*, 53 F3d. Appx. 562, 568 (Fed. Cir. 2002);

5

*Leviton Manufacturing Company, Inc. v. Shanghai Meihao Electric, Inc.*, 613 F. Supp. 2d 670, 729

(D. Md. 2009).

> Under this approach, the court first determines a lodestar figure by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. This lodestar figure may then be increased or decreased based on a variety of factors, such as skill and time required, novelty of the questions involved, fixed or contingent fee basis, results obtained, and/or relationship between attorney and client. The district court must articulate reasons for any changes made to the number of hours spent or to the lodestar. In cases where the fee application is complex, the district court is not required to do a line-by-line analysis, but may make across-the-board cuts, so long as its sets forth a concise reason for its cuts.

*Maxwell*, 53 Fed. Appx. at 568 (internal citations omitted).

Plaintiffs seek attorney fees for work performed on the patent infringement case from September 22, 2005 (the day before this action was filed) through October 18, 2007 (the date when the patent infringement count was dismissed) based upon the lodestar approach. *See* Notice at p. 3.

Plaintiffs' counsel billed a total of 518.9 hours of "attorney, paralegal, and clerk time" over that time period. *Id.* at 4. In 2006, the two main attorneys representing plaintiffs billed at hourly rates of $295 (Mr. Underwood) and $240 (Mr. Rath). *Id.* at 5. The total amount billed to plaintiffs in this action and the related Ohio action was $124,939.50. *Id.* at 5. *See also* Rath Declaration (docket no. 140-2 at pp. 55-84). Plaintiffs are willing to reduce $6,323.50 from this amount for work that was unrelated to the patent infringement issues, i.e., "work/billing entries related strictly to the trade secret misappropriation portion of the case." Notice at p. 6. Taking this reduction into account, plaintiffs' seek attorneys fees in the amount of $118, 616.00. *Id.* Unfortunately, plaintiffs failed to break out the attorney fees by category (obviously, for example, the work of a paralegal is not billed at the same rate as Mr. Underwood's work).

Defendants do not contest the reasonableness of the hourly rates charged by plaintiffs' counsel. *See* Defendants' Memorandum at p. 1 (docket no. 143). Rather, they disagree with plaintiffs' assertion that "essentially" all of the time spent in this action before October 17, 2007 involved the patent infringement claim. *Id.* Defendants point out that the first year of this action involved the procedural issue of forum selection, which culminated in this court's denial of defendants' motion to dismiss on September 14, 2006. *Id.* at p. 4. Without reference to any specific billing entries, defendants assert that the attorneys fees incurred on the forum selection issues exceeded $15,000.00. *Id.* at p. 5. Defendants also state, again without reference to any billing entries, that the fees incurred "after a concession of non-infringement" exceeded $8,500.00. *Id.* In addition, defendants assert that issues clearly beyond the scope of the patent infringement counterclaim, i.e., those involving the individual plaintiffs, totaled close to $15,000.00. *Id.* Thus, defendants assert that approximately $48,500.00 of attorneys fees cannot serve as the basis of an award under § 285. *Id.* In addition, defendants assert that "at least one-half" of the time billed in relation to motion practice "was spent in defending against the Bionix claims as well as in developing plaintiffs' damage claims." *Id.* at p. 4. For these reasons, defendants assert that no more than $35,000.00 was "properly spent" for purposes of a § 285 fee award. *Id.* at p. 6.

The attorney fee provision set forth in § 285 "applies only to infringement actions." *California Eastern Laboratories v. Gould*, 896 F.2d 400, 403 (9th Cir. 1990). For example, § 285 does not apply to an alleged fraud that is "unconnected to any infringement claim." *Id. See generally, Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 475 (Fed. Cir. 1985) ("[w]e recognize that when an action embraces both patent and nonpatent claims, no fees under § 285 can be awarded for time incurred in the litigation of the non-patent issues"). The question for the court

is whether the non-patent infringement issues in this action are so intertwined with the patent infringement issues that the work involved "would, in large part, be material to both types of issues." *See Stickle v. Heublein, Inc.*,  716 F.2d 1550, 1564 (Fed. Cir. 1983).   In addition, a prevailing plaintiff may not be entitled to attorney fees under § 285 for work in related cases in other jurisdictions unless the related action is a prior administrative or state court proceeding that is intimately connected with the action in which the fees are awarded or is otherwise necessary to the prosecution of the claims recoverable under the statute authorizing fees. *Stryker Corporation v. Intermedics Orthopedics, Inc.*, 898 F. Supp. 116, 124 (E. D. N.Y. 1995).

By the court's count, this case originally involved ninety-one claims and counterclaims.[2]  With the exception of defendants' counterclaim for misappropriation of a trade secret, all of the claims and counterclaims arose from the alleged infringement of the '669 Patent and defendants' statements to third-parties regarding that alleged infringement.  While plaintiffs' prevailed on their patent infringement claim and on defendants' patent infringement counterclaim, they did not prevail on the other claims related to the alleged patent infringement.  As the court previously determined, there was no factual or legal basis for the numerous commercial torts alleged by plaintiff Tillman Industries, Inc. and the individual plaintiffs.  Veteran Medical was the only plaintiff that could assert a Lanham Act or Michigan common law action against defendants for trade libel or product disparagement.  However, this plaintiff could not prove any damages.  Plaintiffs did prevail on defendants' counterclaim for misappropriation of trade secrets related to the ear curettes; however, this claim was based on state law and unrelated to the alleged patent

_____

[2] Each of the seven plaintiffs alleged five claims (i.e., two claims for declaratory relief and three claims for damages) against each of the two defendants, resulting in 70 separate claims for relief against defendants.  For its part, Bionix filed three counterclaims against each of the seven plaintiffs, resulting in 21 separate claims for relief.

infringement.  The court notes that at trial, plaintiffs devoted a considerable amount of time to the individual plaintiffs' defense of the counterclaim for misappropriation of trade secrets.

Based on the history of this litigation, the court concludes that while it would be "grossly unjust" for plaintiffs to bear the entire burden of the attorney fees incurred in this litigation, their requested award of $118,616.00 is excessive, and should be reduced for two reasons.  First, plaintiffs had only limited success on their claims related to the alleged patent infringement.  Two of the seven original plaintiffs dismissed their claims against defendants.  While the five remaining plaintiffs successfully obtained a declaration by stipulation with the opposing side that they did not infringe the '669 Patent, they expended significant effort seeking damages on a number of unsuccessful individual federal and state claims purportedly arising from the alleged patent infringement.  By the court's calculation, plaintiffs prevailed on only 15 of the 58 claims and counterclaims related to the alleged patent infringement.[3]  Second, it is apparent from the litigation history that plaintiffs expended significant effort to defend the misappropriation of trade secret

---

[3] As previously noted, the complaint filed by the seven plaintiffs alleged 70 separate claims against the two defendants.  After excluding plaintiffs' 14 claims for declaratory relief with respect to the misappropriation of trade secrets ( i.e., a state law claim unrelated to the alleged patent infringement), plaintiffs' complaint alleged 56 claims related to the alleged patent infringement.  After Kotwick and Longcore dismissed their claims against defendants (i.e., 8 patent related claims and 2 state law claims), this left the five remaining plaintiffs with 48 patent related claims against defendants. The five remaining plaintiffs prevailed at the summary judgment stage by obtaining a declaration that they did not infringe on the '669 Patent.  *See* Order (docket no. 74).  For its part, Bionix's counterclaim alleged 14 patent related claims, i.e., that each of the seven original plaintiffs infringed the '669 Patent and that Bionix was entitled to equitable relief related the alleged infringement. With these counterclaims, this action originally involved 70 separate claims and counterclaims related to the alleged patent infringement.  After Kotwick and Longcore were dismissed, Bionix had a total of 10 counterclaims related to patent infringement against the five remaining plaintiffs.  *Id.*  Plaintiffs prevailed on these 10 counterclaims at the summary judgment stage.  *Id.* From this history, the five remaining plaintiffs prevailed on their 5 their claims seeking a declaration that they did not infringe the '669 Patent and on Bionix's 10 counterclaims seeking a declaration that they did infringe the '669 Patent and equitable relief related to the declaratory relief.  Thus, the five plaintiffs seeking attorney fees under § 285 prevailed on 15 of the 58 claims and counterclaims related to the alleged patent infringement.

counterclaim asserted against them.  Indeed, at the summary judgment stage, plaintiffs characterized this litigation as a "trade secrets case."  Plaintiffs properly deducted some charges for work that was clearly unrelated to the patent infringement claim.  However, plaintiffs provided no basis for this court to determine the amount of attorney fees incurred to resolve their *successful* claims related to the alleged patent infringement.[4]  Given that plaintiffs had success on only a small portion of their claims related to the alleged patent infringement, *see* fn. 3, *supra*, that they expended considerable efforts on state law claims for misappropriation of trade secrets that were unrelated to the alleged patent infringement, and that the they charged rather high rates for the considerable amount of paralegal work done on the case, court reduces plaintiffs' requested fee award  by fifty percent.

Accordingly, plaintiffs are entitled to an award of **$59,308.00** as reasonable attorney fees pursuant to 35 U.S.C. § 285.

Dated:  March 16, 2010                                        /s/ Hugh W. Brenneman, Jr.
                                                             HUGH W. BRENNEMAN, JR.
                                                             United States Magistrate Judge

---

[4] The court notes that many charges utilize generic language that could apply to any of the claims at issue in this litigation. For example: November 30, 2005 ("Telephone conference with client on November 30.") (4.40 hours, $1,232.00); September 20, 2006 ("Conference with client on September 20 re case status.") (.80 hours, $236.00); February 6, 2007 ("Preparation for and attendance at mediation on February 6.") (8.50 hours, $2,252.50); April 11, 2007 ("Legal research.  Inter office conferences among attorneys.") (5.80 hours, $1,015.00); June 6, 2007 ("Work on preparation of discovery responses.  Study correspondence.  Work on preparation of summary judgment motion.") (3.80 hours, $1,007.00).  Clearly, plaintiffs' counsel themselves could not distinguish precisely where their efforts lay.